# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | § §  § Civil Action No. 4:16-cv-902 |
| v. | § Judge Mazzant § |
| MATTHEW CARL GRIFFIN and WILLIAM DANIEL GRIFFIN | § § § |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Securities and Exchange Commission's (the "SEC") Motion for Monetary Remedies and to Enter Final Judgment (Dkt. #9), on which Defendants Matthew Carl Griffin ("Matthew Griffin") and William Daniel Griffin ("Dan Griffin") have requested a hearing. After carefully considering the motion and the corresponding response (Dkt. #12), reply, (Dkt. #13), and sur-reply (Dkt. #14), the Court concludes that the motion should be granted, without the need for a hearing.[1]

## BACKGROUND

The following facts are taken from (1) the allegations in the SEC's Complaint, which are accepted as true on this motion, *see supra* footnote 1, and (2) the parties' exhibits.

Matthew and Dan Griffin (collectively, the "Griffins"), who are proceeding pro se, have worked as executives in various oil and gas companies for much of the past decade. In 2010, Matthew Griffin incorporated Payson Petroleum, Inc. ("Payson Petroleum"), another oil and gas

---

[1] The Griffins seek a hearing "to give all the facts regarding this case" (Dkt. #12 at 2). However, the Court finds a hearing unnecessary because, as explained in more detail below, the Griffins have already stipulated that the facts alleged in the Complaint will be taken as true for purposes of this motion (Dkt. #3; Dkt. #4; Dkt. #5; Dkt. #6). Additionally, the Griffins have had ample opportunity to provide supporting evidence in their response (Dkt. #12) and sur-reply (Dkt. #14).

business.  Matthew Griffin served as its president, chief executive officer, and chairman while Dan Griffin served as its Chief Administrative Officer and a member of its board of directors.  From November 2013 to July 2014, the Griffins solicited investments for Payson Petroleum to develop three oil and gas wells (the "Three Well Program") by widely disseminating a "private placement memoranda" (the "Memo") outlining this investment opportunity.  The Memo contained statements the Griffins knew were false and misleading.  For instance, the Memo indicated that Payson Petroleum would invest millions of its own dollars to drill and complete the wells when, in fact, Payson Petroleum had been operating at a deficit for years and was not in a position to invest.  The Memo also indicated that Payson Petroleum would use roughly $24 million of any investments raised to drill and complete the wells, suggesting that this was simply a pass-through cost, when the Griffins knew it would only cost roughly $16 million to do so.  This allowed Payson Petroleum to, unbeknownst to the investors, treat any additional money raised up to $24 million as a turn-key fee that Payson Petroleum could keep as profit.  The Griffins ultimately raised roughly $23 million from approximately 150 investors, none of whom had experience in oil and gas.  By June 10, 2016, Payson Petroleum and Dan Griffin would file for bankruptcy.  The bankruptcy trustee projects that, after administrative expenses, Payson Petroleum will not have the funds necessary to pay its unsecured creditors.

The SEC filed suit against Matthew and Dan Griffin on November 23, 2016, a few weeks after the bankruptcy court discharged Dan Griffin of his outstanding debts.  *See* 11 U.S.C. § 362(c)(2) (explaining that, generally, "the stay of any other act under subsection (a) of this section continues until the earliest of … the time a discharge is granted or denied).  The SEC alleges that the Griffins violated Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), citing the Griffins' knowing misrepresentations in the

Memo. The SEC simultaneously moved for judgments against the Griffins pursuant to a partial-settlement, which left the amount the Griffins would owe unresolved for the Court to determine, on motion from the SEC, accepting the allegations in the Complaint as true.[2] More specifically, the parties agreed that (1) the Court would determine if the Griffins were liable for disgorgement and, if so, what amount, (2) the Griffins would pay prejudgment interest on any disgorgement damages based on the underpayment tax rate used by the Internal Revenue Service (the "IRS"), and (3) the Griffins would pay a civil penalty in an amount decided by the Court. The parties also agreed that, for purposes of this motion, the Griffins are precluded from arguing that they violated federal securities laws or that the settlement was void or invalid (Dkt. #2; Dkt. #3; Dkt. #4). The Court subsequently entered interlocutory judgments against the Griffins reflecting this agreement (Dkt. #5; Dkt. #6) (the "Agreed Judgments"), prompting the SEC to file the Motion for Monetary Remedies and to Enter Final Judgment (Dkt. #9).

## ANALYSIS

In the motion, the SEC seeks roughly (1) $7 million in disgorgement (the difference between the $23 million raised and the $16 million it actually cost to drill and complete the wells), (2) $500,000 in prejudgment interest, and (3) a civil penalty in an amount determined by the Court. The Griffins, on the other hand, insist that they should not have to pay any amount. The Court agrees with the SEC.

  I.  **Disgorgement**

The district court has "broad discretion" not only in determining whether to order disgorgement but also in calculating the amount to be disgorged. *See Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 805 (5th Cir. 2018). The purpose of disgorgement "is to

---

[2] The Griffins are not required to admit or deny the allegations in the Complaint, otherwise.

deprive the party or parties responsible for the fraud of their gains and to deter future violations of the law," *SEC v. Helms*, No. A-13-CV-01306, 2015 WL 5010298, at *19 (W.D. Tex. Aug. 21, 2015) (citing *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 73 (5th Cir. 1993)), "not to compensate the victims of fraud," *see SEC v. Kahlon*, 873 F.3d 500, 509 (5th Cir. 2017) (quoting *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978)). Accordingly, in actions brought by the SEC involving a securities violation, the starting point is whether the amount to be disgorged is "a reasonable approximate of profits causally connected to the violation." *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007) (quoting *SEC v. First City Fin. Corp.*, 890 F.3d 1215, 1231 (D.C. Cir. 1989)). The plaintiff bears the initial burden of showing that its requested disgorgement amount reasonably approximates the amount of profits connected to the violation. *First City*, 890 F.2d at 1232; *SEC v. Rockwall Energy of Tex., LLC*, No. H-09-4080, 2012 WL 360191, at *3 (S.D. Tex. Feb. 1, 2012). Once this burden is met, the defendant may then "demonstrate that the disgorgement figure was not a reasonable approximation." *First City*, 890 F.2d at 1232. In attempting to mitigate their liability, "'securities laws violators may not offset such liability with business expenses.'" *SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 746 (5th Cir. 2004) (citing *SEC Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 16 (D.D.C. 1998)). Defendants will be held joint and several liable when the defendants "collaborate or have close relationships engaging in illegal conduct." *Id.* at 747.

The SEC argues that $6,987,965.38 in disgorgement should be awarded in this case. The Court agrees. The record reflects that the Griffins misled investors into believing that Payson Petroleum needed $24 million as a pass-through cost to complete and drill the wells, which allowed it to (secretly) retain any amount raised above the $16,031,478.62 it cost to do so. Since the Griffins raised $23,019,444 in investments, the $6,987,965.38 the SEC requests in disgorgement is, at a minimum, a reasonable approximation of the profits the Griffins obtained for Payson

Petroleum due to their wrongdoing. The burden thus shifts to the Griffins to demonstrate that the SEC's calculation is unreasonable, which they have failed to do. The Griffins argue that, because these funds went to Payson Petroleum and not directly to them, disgorgement is wholly improper.[3] The Court disagrees. As the Supreme Court recently noted, disgorgement may be ordered even when the benefit "'accrues to third parties'" if those "'gains can be attributed to the wrongdoer's conduct.'" *See Kokesh v. S.E.C.*, 137 S.Ct. 1635, 1644 (2017) (quoting *SEC v. Contorinis*, 743 F.3d 296, 302 (2nd Cir. 2014)). Disgorgement is thus surely proper where, as here, the defendants' wrongful conduct benefited a company in which they plainly had a financial interest. The Griffins also argue that disgorgement is improper because any misrepresentations made were due to negligence rather than fraud. This argument is similarly unavailing, even if the Griffins had supported this assertion with evidence. As stated, the Griffins agreed that the allegations in the Complaint are true for purposes of this motion, and the Complaint plainly states that the Griffins knowingly deceiving those who invested in the Three Well Program (Dkt. #1 at pp. 9, 11, 12). *See SEC v. Reynolds*, No. 3:08-cv-0438-B, 2013 WL 3479825, at *1-*2 (N.D. Tex. July 11, 2013) ("Based on his consent … Fleming is now precluded from arguing that he did not violate the federal securities laws as alleged in the Amended Complaint. Also, based on the Final Judgment of Permanent Injunction, the Court accepts the allegations of the Amended Complaint as true."). The SEC's request for $6,987,965.38 in disgorgement will thus be granted. Because Matthew and Dan Griffin closely collaborated in their scheme to defraud investors, they will be jointly and severally liable for such disgorgement.

---

[3] In particular, the Griffins note that they did not personally benefit from the investors, citing their tax statements.

II. **Prejudgment Interest**

A court may award prejudgment interest based on securities violations. *See SEC v. Gunn*, No. 3:08-CV-1013-G, 2010 WL 3359465, at *2 (N.D. Tex. Aug. 25, 2010). This ensures that the defendant does not "obtain[] the benefit of what amounts to an interest free loan procured as a result of illegal activity." *See id.* (quoting *SEC v. Sargent*, 329 F.3d 34, 40-41 (1st Cir. 2003)). Such an award "rests within the equitable discretion of the district court to be exercised according to considerations of fairness." *Helms*, 2015 WL 5010298, at *19 (citations omitted). Similar to disgorgement, a court is likely to order joint and several liability against defendants as to prejudgment interest on disgorgement when the defendants "collaborate or have close relationships in engaging in the illegal conduct." *Hughes Capital Corp.*, 124 F.3d at 455; *First Jersey*, 101 F.3d at 1475.

In this case, the parties have agreed that, if disgorgement is ordered, prejudgment interest will be calculated from July 1, 2014, based on the rate of interest used by the IRS for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2) (Dkt. #3 at p. 2; Dkt. #4 at p. 2). *See id.* (explaining that, in calculating prejudgment interest, courts "generally turn[] to the Internal Revenue Service's ("IRS") underpayment rate related to income tax arrearages") (citing 26 U.S.C. § 6621(a)(2); *SEC v. Koenig*, 532 F. Supp. 2d 987, 995(N.D. Ill. 2007)). Because the SEC has calculated its request for $499,456.63 using the IRS underpayment tax rate (Dkt. #9, Exhibit 1 at p. 29), and the Griffins do not contest the SEC's interest calculation, the SEC's request will be granted. The Griffins will be jointly and severally liable for this amount because, as stated, they closely collaborated in their scheme to defraud investors.

III. **Civil Penalty**

Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act authorizes the Court to issue civil penalties based on the severity of the underlying violation. 15 U.S.C. §§ 77t(d), 78u(d). Such penalties "are designed to serve as deterrents against securities law violations, in contrast with disgorgement, which primarily aims to remove a defendant's profit from illegal transactions and which 'merely places the offender in the same position he would have been had he not committed the offense.'" *Helms*, 2015 WL 5010298, at *21 (quoting *SEC v. Lipson*, 129 F. Supp. 2d 1148, 1159 (N.D. Ill. 2001)). There are three tiers of penalties, each with a required evidentiary burden. While all violations are subject to first-tier sanctions, second-tier sanctions are warranted when violations involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and third-tier sanctions are appropriate for violations that involve fraud and "result[] in substantial losses to other persons or create[] a significant risk of substantial losses." *See* 15 U.S.C. §§ 77t(d), 78u(d).

A third-tier penalty is appropriate because the Griffins have admitted to engaging in fraudulent conduct which created a significant risk of substantial losses to the investors, as evidenced by Payson Petroleum's recent bankruptcy. The issue, then, is the amount that the Griffins should be penalized. Although the tier determines the maximum penalty amount, the actual amount imposed is left to the Court's discretion. *SEC v. Kern*, 425 F.3d 143, 153 (2d Cir. 2005). To decide the appropriate amount of sanctions, the Court considers the following factors:

> (1) The egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*Helms*, 2015 WL 5010298, at *21 (quoting *SEC v. Offill*, No. 3:07-CV-1643-D, 2012 WL 1138622, at *3 (N.D. Tex. Apr. 5, 2012)).

The Court finds that the Griffins should each be assessed a civil penalty for $100,000, $60,000 less than the maximum amount for a third-tier violation. The Griffins acted highly egregiously (Factor No. 1) and knowingly (Factor No. 2) when they induced roughly 150 people into making large investments in a company which, unbeknownst to them, had a poor financial track record (Factor No. 3) by widely disseminating the misleading Memo over the course of eight months (Factor No. 4). However, a penalty in the maximum amount would be improper in light of the Griffin's poor financial circumstances (Factor No. 5). The Griffins have repeatedly maintained that they lacked the funds necessary to hire a lawyer, as demonstrated by their pro se status in this case. Additionally, Matthew Griffin's tax returns from 2012-15 and Dan Griffin's individual bankruptcy, which resulted in discharge of his debts, suggest that the Griffins will find it difficult to pay the amounts already imposed on them in disgorgement and prejudgment interest, let alone a maximum civil penalty on top of those amounts.

The SEC suggests (without advocating) that the Court could find that the Griffins committed multiple violations, *see SEC v. E-Smart Techs, Inc.*, 139 F.Supp.3d 170, 192 (D.D.C. 2015) (explaining that "courts have taken widely divergent approaches to this question"), which would allow the Court to impose multiple civil penalties against them, *see id.* (explaining that "[t]he civil-penalty provisions permit imposition of a fixed penalty 'for each violation.'") (quoting 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B)). But the Court sees no reason to do so. Each of the Griffins' misrepresentations and omissions were part of a single scheme to raise funds for the Three Well

Program,[4] and the Court has already considered the Griffins' recurring conduct when deciding that a $100,000 penalty is appropriate. *See id.* (finding a single violation where there were multiple misrepresentations on one document concerning one product).[5]

## CONCLUSION

The Securities and Exchange Commission's Motion for Monetary Remedies and to Enter Final Judgment (Dkt. #9) is **GRANTED**, making the Griffins' request for a hearing on the motion moot. Accordingly, the Court **ORDERS** that:

1. Defendants are jointly and severally liable for disgorgement in the amount of $6,987,965.38;

2. Defendants are jointly and severally liable for prejudgment interest in the amount of $499,456.63; and

3. Defendants are each separately liable for a civil penalty in the amount of $100,000.

A final judgment reflecting the Court's determinations in this Order is forthcoming.

**SIGNED this 9th day of October, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[4] The SEC acknowledges that the Court has the discretion "to count the Griffins' violations as a single violation, as they engaged in a single fund-raising scheme for a single project, the 3 Well Program" (Dkt. #9 at 25).

[5] *See also SEC v. Sethi Petroleum, LLC*, No. 4:15-cv-00338, 2017 WL 3386047, at *9 (E.D. Tex. Aug. 7, 2017) (finding a single violation where the defendant induced ninety people to invest in a single joint venture).